UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER KERWOOD, individually and on behalf of all others similarly situated, | CASE NO. 15-13435 |
| PLAINTIFF, | |
| | CLASS ACTION COMPLAINT |
| V. | DEMAND FOR JURY TRIAL |
| VOLKSWAGEN GROUP OF AMERICA, INC., | |
| DEFENDANT. | |

**INTRODUCTION**

1.      This action seeks relief on behalf of Plaintiff Jennifer Kerwood and a class of Massachusetts owners or lessees of Volkswagen diesel vehicles she seeks to represent. Volkswagen defrauded these Massachusetts residents by selling them so-called "clean diesel" vehicles that it represented to be less polluting than standard vehicles, but in fact emitted much greater amounts of greenhouse gases than other vehicles. Volkswagen purposely designed these vehicles to circumvent emissions testing to hide their true levels of toxic output.

**PARTIES**

2.      Plaintiff Jennifer Kerwood is an individual residing in Medford, Massachusetts.

3.      Volkswagen Group of America, Inc. is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

4.      At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the affected vehicles under the Volkswagen and Audi brand names throughout the United States.

JURISDICTION

5.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

VENUE

6.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and purchased her vehicle here. Volkswagen marketed, advertised, sold, and leased the affected vehicles within this District.

FACTUAL ALLEGATIONS

7.      In 2008, Volkswagen introduced a so-called new breed of "clean diesel" vehicles, with its Turbo-charged Direct Injection ("TDI") engines, beginning with the

Jetta TDI sedan. These vehicles were marketed to consumers as a technological

breakthrough, having diesel engines that could meet the California Air Resources

Board's (CARB) stringent emissions standards, while at the same time delivering higher

fuel efficiency and performance. Volkswagen's marketing stressed both the eco-

friendliness and the performance of this "new breed" of diesel.



They were sold at a premium above the cost of standard gasoline vehicles, ranging from

$2,000 to $6,000 each.

        8.        Volkswagen represented to consumers that its new diesel engines would

reduce greenhouse gas emissions, including nitrogen oxides (NOx), and that they were

EPA certified in all 50 states.

In fact, the EPA has now found that Volkswagen's "clean" diesel engines actually emit far more NOx than standard engines, up to 40 times more. Volkswagen purposefully designed these TDI vehicles to conceal the levels of toxic output in order to circumvent federal and state emissions laws. As Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA stated: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health." Sept. 18, 2015 EPA News Release. Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi diesel vehicles.

9.     On September 18, 2015 the EPA issued a Notice of Violation ("NOV") to Volkswagen for failure to comply with Clean Air Act regulations in 482,000 diesel vehicles sold in the United States since 2008.

10.    As explained in the NOV, Volkswagen manufactured and installed so-

called "defeat devices" in Volkswagen and Audi diesel vehicles it sold in the United States, that were equipped with 2.0 liter engines. NOV, at 1. Defeat devices detect when the vehicle is undergoing emissions testing and turn on emissions controls, enabling the vehicle to produce lower emissions during testing. But during normal operations, these emissions controls are suppressed. This artifice results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit NOx at up to 40 times the standard allowed under United States laws and regulations. Such "defeat devices" are expressly prohibited by the Clean Air Act and its regulations. 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854012(a)(3)(ii).

11.     Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the affected vehicles, which included the "defeat device." Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the affected vehicles.

12.     Nitrogen oxide pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. As the EPA explains in its NOV, "nitrogen oxides are a family of highly reactive gases that play a major role in the atmospheric reactions with volatile organic compounds (VOCs) that produce ozone (smog) on hot summer days." NOV, at 2. Exposure to these pollutants has been linked to serious health dangers, including asthma and other respiratory illnesses serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly,

and people with preexisting respiratory illness are at acute risk of health effects from these pollutants.

13.     The Clean Air Act was passed to address the health dangers caused by such emissions. When it enacted the CAA, Congress found that "the increasing use of motor vehicles ... has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2). The CAA's emissions restrictions were put in place to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)( 1 )-(2). The Act and its regulations do so by restricting emissions of nitrogen oxides and other pollutants from motor vehicles through its emission standards. Every vehicle sold in the United States must satisfy emission standards for certain pollutants, including NOx. 40 C.F.R. § 86.1811-04.

14.     In addition, for every vehicle introduced into United States commerce, the manufacturer must obtain a Certificate Of Conformity ("COC") from the EPA certifying compliance with applicable emission standards. Vehicles equipped with defeat devices, like those installed by Volkswagen, cannot be certified. EPA, Advisory Circular Number 24: *Prohibition on use of Emission Control Defeat Device* (Dec. 11, 1972); *see also* 40 C.F.R. §§ 86.1809-01, 86.1809-10, 86.1809-12. Volkswagen applied for and obtained a COC, but it failed to describe its "defeat device" in the COC application.

15.     By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, breached its contracts, violated warranties, and

engaged in unfair and deceptive practices under state and federal law.

16.     According to the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

17.     Volkswagen charged a substantial premium for the Affected "CleanDiesel" Vehicles. For example, for the 2015 Jetta, the base S model has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher. The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

18.     These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing. The table below sets forth the price premium for each base, mid-level and top-line trim for each affected model:

### CleanDiesel Price Premiums

| Model | Base | Mid-Level | Top-Line |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

19.     Volkswagen initially denied but on September 20, 2015 admitted that it "designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing." NOV, at 4. It has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including horsepower and efficiency. As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

20.     As a result of Volkswagen's deception, owners and lessees of the Affected Vehicles have suffered an injury. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. And when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Affected vehicles will necessarily be worth less in the

marketplace because of their decrease in performance and efficiency.

FACTS PERTAINING TO PLAINTIFF

21.     In 2010, Ms. Kerwood and her husband purchased a 2010 Jetta TDI CleanDiesel SportWagen from Colonial Volkswagen of Medford, an authorized Volkswagen dealer in Medford, Massachuetts.

22.     Mr. and Mrs. Kerwood purchased this vehicle for personal, family and household use, and still own it.

23.     The Kerwoods live a "green" lifestyle, are environmentally conscious, and bought this vehicle believing that it was better for the environment than gasoline powered cars.

24.     Unbeknownst to the Kerwoods, at the time they bought the car, it was equipped with an emissions control "defeat device" which caused the vehicle to get an EPA certification for which it did not qualify by passing certain emissions tests, but at all other times emitted up to 40 times the allowed level of pollutants, including NOx.

TOLLING OF THE STATUTE OF LIMITATIONS

A.     DISCOVERY RULE TOLLING

25.     Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device." It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part. As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing

using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

26.     Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of in this Complaint and misrepresenting its true position with respect to the emission qualities of its vehicles.

27.     Plaintiff and the other Class Members did not discover, and did not know of the facts that would have caused a reasonable person to suspect that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers. Nor would a reasonable and diligent investigation by them have disclosed the existence of VW's sophisticated emissions scheme and its concealment of the scheme. This information was discovered by Plaintiff only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations. Or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true

quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

28.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.     FRAUDULENT CONCEALMENT TOLLING**

29.     All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

30.     Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.



C.    ESTOPPEL

31.    Volkswagen was under a continuous duty to disclose to Plaintiff and other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

32.    Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.



33.    Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

34.    Based on the foregoing, Volkswagen is estopped from relying on any

statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

35.     Plaintiff brings this action on behalf of herself and as a class action,

pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

Procedure on behalf of the following class:

> All persons or entities in Massachusetts who are current or former owners or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

36.     Excluded from the Class are individuals who have personal injury claims

resulting from the "defeat device" in the CleanDiesel system. Also excluded from the

Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely

election to be excluded from the Class; governmental entities; and the judge to whom

this case is assigned and his/her immediate family. Plaintiff reserves the right to revise

the Class definition based upon information learned through discovery.

37.     Certification of Plaintiff's claims for class-wide treatment is appropriate

because Plaintiff can prove the elements of her claims on a class-wide basis using the

same evidence as would be used to prove those elements in individual actions alleging

the same claim.

38.     This action has been brought and may be properly maintained on behalf

of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

39.     *Numerosity*. Rule 23(a)(1): The members of the Class are so numerous that

individual joinder of all Class members is impracticable. While Plaintiff is informed and

believes that there are not less than one thousand Class members, the precise number is

unknown to Plaintiff, but may be ascertained from Volkswagen's books and records.

Class members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods.

40.   *Commonality and Predominance*: Rule 23(a)(2) and 23(b)(3): This action

involves common questions of law and fact, which predominate over any questions

affecting individual Class members, including, without limitation:

a)   Whether Volkswagen engaged in the conduct alleged;

b)   Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in Massachusetts;

c)   Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with EPA requirements;

d)   Whether the CleanDiesel engine system in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e)   Whether Volkswagen knew about the "defeat device" and, if so, for how long;

f)   Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

g)   Whether Volkswagen's conduct violates Massachusetts consumer protection statutes, warranty laws, and other laws as asserted herein;

h)   Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

i)   Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j)   Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

41.    *Typicality*: Rule 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

42.    *Adequacy*: Rule 23(a)(4): Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Classes she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

43.    *Declaratory and Injunctive Relief*: Rule 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

44.    *Superiority*: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the Class to individually seek redress for Volkswagen's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for

inconsistent or contradictory judgments, and increases the delay and expense to all

parties and the court system. By contrast, the class action device presents far fewer

management difficulties, and provides the benefits of single adjudication, economy of

scale, and comprehensive supervision by a single court.

CAUSES OF ACTION

COUNT I
(Fraud)

45.     Volkswagen intentionally misrepresented and concealed material facts

concerning the quality of the Affected Vehicles despite a duty to disclose. Volkswagen

intentionally evaded federal and Massachusetts vehicle emission standards by installing

a software device which misrepresented its vehicles' nitrogen oxide pollutant

emissions. Volkswagen vehicles passed emission certifications by deliberately inducing

false results. Volkswagen's deliberate scheme resulted in noxious emissions as high as

40 times EPA and Massachusetts standards.

46.     Volkswagen then advertised and sold these vehicles to customers, like

Plaintiff and the Class, who paid a premium, ironically, to purchase "cleaner" vehicles.

47.     Volkswagen intentionally concealed that the CleanDiesel engine systems

were not EPA-compliant, by using its "defeat device," or acted with reckless disregard

of the truth. Volkswagen denied Plaintiff and the Class information that would have

affected their decision to purchase the vehicle.

48.     Volkswagen made further misrepresentations to Plaintiff and the Class

through advertisements and other communications—including the standard material

provided in each Affected Vehicle, promising the vehicle had no significant defects and that the vehicle complied with EPA regulations and would perform and operate properly when driven in normal usage.

49.     Volkswagen knew these representations were false when they were made.

50.     The Affected Vehicles purchased or leased by Plaintiff and the Class were in fact defective, non-EPA compliant, unsafe, and unreliable due to the CleanDiesel engine system.

51.     Volkswagen had a duty to disclose that the Affected Vehicles sold to customers were defective, unsafe, non-EPA compliant, and unreliable. Volkswagen had a duty to disclose for reasons including but not limited to: (1) Volkswagen entered into business transactions with Plaintiff and the Class knowing that statements it made about the emissions output of the Affected vehicles were misleading; and (2) Volkswagen knew at the time of the contract that Plaintiff and the Class were about to enter into a transaction under a mistaken belief caused by Volkswagen—and should reasonably expect Volkswagen to disclose facts pertaining to its mistaken belief.

52.     Volkswagen's concealment and misrepresentations were material because, had Volkswagen disclosed this information, Plaintiff and the Class would not have bought or leased the Affected Vehicles—or would not have bought or leased the vehicles at the prices they paid.

53.     These representations were also material because they were facts that would typically be relied upon by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because

it used the "defeat device" to pass EPA emission requirements for the Affected

Vehicles. Volkswagen intentionally made the false statements in order to sell the

Affected Vehicles.

54.     Plaintiff and the Class relied on Volkswagen's material representations

that the Affected Vehicles were safe, environmentally clean, and met applicable

emission standards. They also relied on Volkswagen's silence as to any defects in the

CleanDiesal Engine system

55.     This fraudulent conduct induced Plaintiff and the Class to purchase or

lease Volkswagen's Affected Vehicles.

56.     As a result of their reliance, Plaintiff and the Class have been injured in an

amount to be proven at trial, including, but not limited to their: (1) lost benefit of the

bargain; (2) overpayment at the time of purchase or lease; and (3) diminished value of

their Affected Vehicles.

## COUNT II
### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (Violations of Chapter 93A)

57.     Plaintiff intends to assert a claim under G.L. c. 93A, the Massachusetts

Consumer Protection Act, which makes it unlawful to engage in any "[u]nfair methods

of competition or deceptive acts or practices in the conduct of any trade or commerce."

G.L. c. 93A, § 2(1). Plaintiff has made a demand in satisfaction of G.L. c. 93A, § 9(3), and

will amend this Complaint to assert claims under Chapter 93A once the required 30

days have elapsed. This paragraph is included for purposes of notice only and is not

intended to assert a claim under Chapter 93A.

## COUNT III
### (Breach of Contract and Implied Covenant of Good Faith and Fair Dealing)

58.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the Class defective Affected Vehicles that did not comply with EPA and Massachusetts emissions standards, were unfit for driving, and did not comport with the agreed upon emissions output. Contrary to the bargained-for-exchange, Plaintiff and the Class paid a premium for cleaner diesel engines, but received vehicles with emissions higher than any approved vehicles on the roads.

59.     Additionally, Volkswagen breached its implied covenant of good faith and fair dealing. Volkswagen's failure to produce an approved vehicle unlawfully emitting up to 40 times the federal standard, and in excess of the Massachusetts standard—despite clear representations of a "cleaner" vehicle—falls well below Plaintiff's and the Class's reasonable expectations under their respective contracts.

60.     Volkswagen's failure to produce an EPA-compliant vehicle, despite its misrepresentations, caused the Affected Vehicles to be less valuable than vehicles not equipped with a CleanDiesel engine system.

61.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which includes, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV
### (Breach of Express Warranty)

62.     Volkswagen made express representations to Plaintiff and the Class that the Affected Vehicles generally burned cleaner diesel fuel, reduced greenhouse gas emissions, and complied with emissions standards. Volkswagen made these representations through advertisements, publications, and directly in person.

63.     Volkswagen's representations about its vehicles were included in the basis of the bargain.

64.     As a direct and proximate cause of Volkswagen's breach, Plaintiff and the Class received goods substantially lower in value. They will suffer damages such as diminished vehicle value and increased maintenance and repair costs.

## COUNT V
### (Breach of Implied Warranty of Fitness for a Particular Purpose)

65.     Volkswagen is a "seller" as contemplated by G.L. c. 106 § 2-315.

66.     Plaintiff and the Class are "buyers" as contemplated by G.L. c. 106 § 2-315.

67.     At the time Plaintiff and the Class contracted with Volkswagen to purchase the Affected Vehicles, Volkswagen had reason to know they wished to purchase a cleaner diesel-powered vehicle with lower emissions. In fact, they were willing to pay, and paid, premiums amounting to thousands of dollars more for a cleaner vehicle.

68.     Plaintiff and the Class relied on Volkswagen's skill and judgment to select the Affected Vehicles.

69.     Volkswagen breached its implied warranty of fitness for a particular purpose when it selected a vehicle with high emissions.

70.     As a direct and proximate cause of Volkswagen's breach, Plaintiff and the Class received goods substantially lower in value. They will suffer damages such as diminished vehicle value and increased maintenance and repair costs.

## COUNT VI
## (Unjust Enrichment)

71.     Plaintiff and the Class conferred a benefit on Volkswagen when they paid a premium of thousands of dollars and selected Volkswagen vehicles over those of competitors, all while not receiving a cleaner vehicle in return. They received a vehicle that violated federal and Massachusetts emission standards.

72.     Volkswagen understood and accepted the benefit without providing for its value.

73.     It would be inequitable for this Court to allow Volkswagen to retain the benefit of premiums paid and monies associated with increased Volkswagen sales.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all class members, requests that the Court enter judgment in their favor and against Volkswagen, as follows:

A.      Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B.  An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.  Injunctive relief in the form of a recall or free replacement program;

D.  Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E.  An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F.  An award of costs and attorneys' fees; and

G.  Such other or further relief as may be appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: September 24, 2015

Respectfully submitted,

*/s/ John Roddy*
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey & Glasser LLP
99 High Street, Suite 304
Boston, MA 02110
(617) 439-6730 (phone)
(617) 951-3954 (fax)